ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016-3231
Telephone: (602) 682-6450
Facsimile:  (602) 682-6455
dck@robainalaw.com
David C. Kresin (019858)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Scott E. Smithson,<br><br>                      Plaintiff,<br><br>vs.<br><br>Aetna Life Insurance Company,<br><br>                      Defendant. | No.<br><br>**COMPLAINT** |

Plaintiff Scott E. Smithson alleges as follows:

1. Plaintiff Scott E. Smithson ("Mr. Smithson") brings this ERISA action against Aetna Life Insurance Company ("Aetna"), in its capacity as administrator of the Long Term Disability Policy under the Bank of America Corporation Long Term Disability Group Plan ("the Plan"). Mr. Smithson brings this action to secure all disability benefits to which he is entitled under the Plan, which is underwritten and administered by Aetna. Mr. Smithson is covered under the Plan by virtue of his employment with Bank of America Corporation.

2. Mr. Smithson is a citizen and resident of Maricopa County, Arizona.

3. The Plan was funded and administered by Aetna.

4. Aetna is a Connecticut corporation doing business in the District of Arizona.

5.  This court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that the claim arises under the laws of the United States of America. Specifically, Mr. Smithson brings this action to enforce his rights under section

502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

6. Venue in the District of Arizona is proper because Aetna does business in the District of Arizona.  Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  Venue is proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." *Id*. Here, Aetna is "found" within the District of Arizona, as it does business here, and the court has personal jurisdiction over Aetna, as it has sufficient ties to the United States.

7. At all relevant times, Mr. Smithson has been a covered beneficiary under the Plan's Group Policy, GP-811383, issued by Aetna.  That policy became effective - January 1, 2009.

8. The disability policy at issue covered Mr. Smithson because of his employment with Bank of America Corporation at the time Mr. Smithson's disability began.

9. Under the terms of the policy, Aetna administered the Plan and retained the sole authority to grant or deny benefits to applicants.

10. The disability policy at issue did not grant Aetna discretion with respect to its decisions and interpretation of the policy.

11. Aetna funds the Plan benefits under the disability policy.

12. Because Aetna both funds the Plan benefits and retains the sole authority to grant or deny benefits, Aetna has an inherent conflict of interest.

13. This Court should consider Aetna's conflict of interest an important factor in its review of Aetna's decision to deny disability benefits.

14. Aetna has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

15. Mr. Smithson is a 57-year-old male previously employed by Bank of America Corporation as a Senior Change Manager.

16. Mr. Smithson ceased actively working on January 5, 2009 due to his physical disability diagnosed as degenerative lumbar disc disease, spinal stenosis, and various related impairments.

17. Mr. Smithson filed for short term disability benefits, which were granted.

18. Mr. Smithson filed for long-term disability benefits through the Plan administered by Aetna.

19. Under the Plan, from the date of disability until monthly benefits were payable for 18 months, the insured is disabled if he is "not able to perform the material duties of [his] own occupation . . . and [his] work earnings are 80% or less of [his] adjusted predisability earnings."

20. According to the Plan, after the first 18 months that any monthly benefit is payable during a period of disability, the insured is disabled only if the insured is "not able to work at any reasonable occupation" due to a disability. A "reasonable occupation" is defined as "any gainful activity for which [he is]; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 60% of [his] adjusted predisability earnings."

21. On June 26, 2009, Aetna granted long term disability ("LTD") benefits under the Plan.

22. On January 4, 2011, Mr. Smithson received a letter from Aetna terminating his LTD benefits effective January 1, 2011.

23. On June 28, 2011, Mr. Smithson submitted a timely internal appeal of Aetna's adverse determination.

24. On October 11, 2011, Aetna overturned its January 2011 termination of benefits and reinstated Mr. Smithson's LTD benefits effective January 1, 2011.

25. On June 10, 2015, Aetna again sent a letter to Mr. Smithson terminating his LTD benefits, effective immediately.

26. On December 4, 2015, Mr. Smithson again submitted a timely internal appeal of Aetna's adverse determination.

27. On February 17, 2016, Aetna overturned its June 10, 2015 decision terminating Mr. Smithson's LTD benefits and reinstated the LTD benefits effective June 11, 2015.

28. In its February 17, 2016 letter, Aetna stated: "We've reviewed all of the information in the claim file and decided that there is sufficient medical evidence to support a functional impairment that would have prevented Mr. Smithson from performing work at any reasonable occupation."

29. On May 15, 2017, Aetna again terminated Mr. Smithson's LTD benefits, effective immediately.

30. In its May 15, 2017 termination letter, Aetna relied upon a March 30, 2015 Occupational Medicine Peer Review and a January 22, 2016 Functional Capacity Evaluation, both of which occurred prior to Aetna's previous decision reinstating benefits and were part of the claim file and medical evidence that Aetna previously concluded supported the finding that Mr. Smithson remained disabled.

31. Although the March 2015 peer review concluded Mr. Smithson could perform sedentary work, the report was full of objectively proven inaccuracies. For example, the peer reviewer repeatedly asserted that Mr. Smithson received only one 90-pill prescription of Percocet that lasted him four months. Mr. Smithson submitted proof to Aetna in December 2015 that he received two 90-pill prescriptions of Percocet every four months.

32. Further, the March 2015 peer review cited in the termination letter, purported to rely on interviews with Mr. Smithson's medical providers, Dr. Edward

Song and Dr. Eric Boyd. But by December 2015, Aetna had received statements under oath of Dr. Song and Dr. Boyd, which established that virtually none of the alleged comments attributed to them were accurate and established that Dr. Boyd had not personally examined Mr. Smithson since November 2009.

33. In its May 2017 decision, despite that Dr. Boyd had not examined Mr. Smithson in over seven years at that point, Aetna relied on Dr. Boyd's input and agreement with the March 2015 peer review.

34. In its May 2017 letter, with respect to the January 22, 2016 Functional Capacity Evaluation, Aetna acknowledged the evaluator's conclusion that Mr. Smithson had not demonstrated capabilities meeting the requirements of a sedentary job but claimed that the evaluator noted Mr. Smithson's "inconsistent test performance indicative of less than full effort." The evaluator, however, did not suggest that Mr. Smithson's pain symptoms were illegitimate and in fact noted significant evidence that his pain was legitimate.

35. The May 2017 termination letter likewise cited surveillance of Mr. Smithson conducted on February 16, 2017, in which "Mr. Smithson was observed operating a motor vehicle and walking briefly with a limp, but he was not using any assistive devices."

36. A February 23, 2017 Surveillance Report that reported all surveillance activities on February 16-18, 2017 showed no operation of a motor vehicle. Indeed, everything reported in the February 2017 surveillance report was consistent with what Mr. Smithson and his medical providers had reported to Aetna since 2009 and had been considered in two prior appeal determinations that Mr. Smithson remained disabled.

37. Likewise, other surveillance not cited by Aetna also was entirely consistent with what Mr. Smithson and his medical providers had reported to Aetna since 2009. With that information in hand since at least 2009, Aetna has reaffirmed Mr. Smithson's disabled status no less than 18 times in its internal claim notes.

38. The May 2017 termination letter also relied on an internal clinical consultant review, which had been requested and justified based on the deeply flawed—if not fraudulent—March 2015 peer review, the November 2016 surveillance allegedly showing Mr. Smithson driving and some December 2014 surveillance, which had already been considered and discarded in a previous appeal.

39. Contrary to the characterization in the May 2017 termination letter, the clinical consultant internal claim notes reveal significant support that Mr. Smithson remained disabled: "Medical records reviewed demonstrate ***no change in clinical status*** with continued of chronic intractable [lower back pain] noting ongoing chronic [lower back pain] due to post laminectomy syndrome with lumbar radiculopathy. Claimant has declined [spinal cord stimulator] trial and orthopedist continues to opine no sitting more than 10 minutes; no walking more than 5 minutes; no lifting, bending, twisting; ***Permanently Disabled***." (emphasis added).

40. While the clinical consultant ultimately drew the conclusion that Aetna wanted her to reach, none of her findings reveal any new information or change in Mr. Smithson's status that could justify a departure from the previous 18 times that Aetna had reaffirmed Mr. Smithson's disabled status based on the same data.

41. Further, the clinical consultant not only relied on the previously debunked March 2015 peer review and the confirmation by Dr. Eric Boyd, but also mischaracterized the confirming physician as a "treating orthopedist" when in fact Dr. Boyd was a pain management physician who had not observed Mr. Smithson in over five years prior to his asserted confirmation of the peer review findings—facts Aetna knew well since at least December 2015.

42. The May 2017 termination relied on an April 2017 independent medical examination, in which the examiner drew far reaching conclusions that Mr. Smithson could perform full-time sedentary work under certain limited restrictions.

43. In that examination, however, Mr. Smithson was physically examined for only 5-6 minutes and subjected only to walking four steps, checking his reflexes, and

bending forward and backward. The examination did not involve any pushing, pulling, lifting, kneeling, or twisting tests and the other tests that were performed lasted less than a minute and could not possibly have supported the durational conclusions reached.

44. Consistent with its history regarding Mr. Smithson's claim, Aetna manipulated the information provided to the IME physician, declining to provide the IME physician with several pertinent medical records that supported Mr. Smithson's disabled status, including a December 1, 2016 Attending Physician Statement and Capabilities & Limitations Worksheet—his attending physician's recent analysis of Mr. Smithson's limitations.

45. As noted in the May 2017 termination letter, when Aetna shared the IME report with Mr. Smithson's attending physician, the physician responded that he was not in agreement with the IME conclusions regarding Mr. Smithson's capacity. Despite that Aetna had all of that physician's records from 2009 to date, including his detailed assessment on December 1, 2016 clearly indicating Mr. Smithson could not perform any level of work, Aetna dismissed the attending physician's opinion because he did not "provide any supporting documentation in support of Mr. Smithson's inability to perform within the capacity noted by the IME physician."

46. Finally, in the May 2017 termination letter, Aetna claims to have relied on the medical records of two of Mr. Smithson's physicians, but none of those records support that Mr. Smithson could perform full-time sedentary work.

47. In the May 2017 termination letter, Aetna erroneously identified Mr. Smithson's pre-disability earnings as his "adjusted predisability earnings", resulting in Aetna failing to provide the annual adjustment to his 2009 earnings required by the Plan.

48. On October 12, 2017, Mr. Smithson submitted to Aetna his timely internal appeal of the adverse determination, setting forth the many errors and flaws in its May 2017 decision to terminate benefits and the record Aetna purportedly relied on.

49. Mr. Smithson submitted additional information including testimony and medical records to show that he is totally disabled from the performance of his own and any other occupation as defined in the Plan.

50. On December 21, 2017, Aetna notified Mr. Smithson that Aetna affirmed its previous decision to deny Mr. Smithson's claim for LTD benefits and that Mr. Smithson had exhausted his administrative remedies.

51. Aetna, in its final denial, discounted Mr. Smithson's medical history, the opinions and testimony of Mr. Smithson's treating physicians, among others, and the documented limitations from which Mr. Smithson suffers including the effects of Mr. Smithson's impairments on his ability to engage in work activities.

52. In the December 21, 2017 letter, Aetna incorrectly indicated Mr. Smithson had worked as an assistant branch manager and incorrectly relied on an earning level of $29.45 per hour, based on unadjusted pre-disability earnings, to determine that other jobs were available that Mr. Smithson could perform.

53. In rendering its final decision, Aetna purported to rely on the March 2015 peer review and the alleged agreement of Dr. Eric Boyd—the pain management specialist who had not examined Mr. Smithson in more than five years.

54. In rendering its final decision, Aetna purported to rely on another allegedly independent medical review, in which the reviewer ignored the prior medical record that supported Mr. Smithson's disabled status and mischaracterized other portions of the medical record.

55. Aetna also relied on a vocational rehabilitation review that identified alleged occupations that existed and met all reasonable occupation requirements under the policy, including the wage requirement. The vocational rehabilitation review was based on minor work restrictions and limitations determined without any appreciable physical examination and contrary to the long established medical record.

56. Mr. Smithson has exhausted his administrative remedies and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

57. Mr. Smithson's condition and related impairments have resulted in restrictions in activity, have severely limited his range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

58. Mr. Smithson's physical impairments have resulted in chronic pain and discomfort.

59. His treating physicians document these symptoms and do not assert that he suffers from the symptoms based solely on his own subjective allegations.

60. Physicians have prescribed Mr. Smithson with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

61. Mr. Smithson nevertheless suffers from severe pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

62. Mr. Smithson's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, i.e. an eight-hour day, day after day, week after week, month after month.

63. Mr. Smithson's medications cause additional side effects in the form of sedation and cognitive limitations.

64. Those impairments and their symptoms preclude Mr. Smithson's performance of any work activities on a consistent basis.

65. As a result of his condition and related impairments, Mr. Smithson has been and remains disabled under the terms of the Plan and has sought disability benefits under the Plan.

66. After Mr. Smithson has exhausted his administrative remedies, Aetna persists in denying his rightfully owed disability benefits.

67. At all relevant times, Aetna has been operating under an inherent and structural conflict of interest as Aetna is liable for benefit payments due to Mr. Smithson and each payment depletes Aetna's assets.

68. Aetna's determination was influenced by its conflict of interest.

69. Aetna has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

70. Aetna has wrongfully denied disability benefits to Mr. Smithson in violation of Plan provisions and ERISA for the following reasons:

    a. Mr. Smithson is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

    b. Aetna failed to afford proper weight to the evidence in the administrative record showing that Mr. Smithson is totally disabled;

    c. Aetna's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

    d. Aetna has violated its contractual obligation to furnish disability benefits to Mr. Smithson.

71. By reason of the Aetna's failure to pay Mr. Smithson benefits as due under the terms of the Plan, Mr. Smithson has been forced to retain attorneys to recover such benefits, for which Mr. Smithson has and will continue to incur attorney's fees. Mr. Smithson is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Scott E. Smithson prays for judgment against Defendant Aetna Life Insurance Company as follows:

    A. For a declaration finding that Smithson is entitled to all past due long term disability benefits yet unpaid;

    B. For an order that Aetna pay past long term disability benefits retroactive to May 15, 2017 to the present in the monthly amount specified in the Plan

and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. For an order that Aetna remand the claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Aetna makes an adverse determination of long-term disability consistent with ERISA and Smithson's entitlements under the Plan;

D. For an order that Aetna pay for the costs of this action and Smithson's attorneys' fees and related expenses, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and,

E. For such other relief as the Court may deem just and proper.

DATED this 12th day of June, 2018.

ROBAINA & KRESIN, P.L.L.C.

By _____
David C. Kresin
Attorneys for Plaintiff